THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HENRY G. CARTER,

    Plaintiff,

v.

INDEPENDENT PRODUCTIONS, INC.,
a Pennsylvania corporation, and
GEORGE THOROGOOD & THE
DESTROYERS, INC., a Pennsylvania
corporation,

    Defendants.

C.A. NO. 07-418 (JJF)

## ANSWER AND COUNTERCLAIM

Defendants Independent Productions, Inc. and George Thorogood & The Destroyers, Inc. (collectively, the "Defendants") hereby respond to the separately-numbered allegations of the Complaint as follows:

1.     Admitted.

2.     Denied.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Defendants admit the first sentence of paragraph 6 and deny the second sentence of paragraph 6.

7.     Admitted.

8.     Denied.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Defendants incorporate herein by reference their responses to paragraphs 1 through 23.

25. Denied.

26. Denied.

27. Defendants incorporate herein by reference their responses to paragraphs 1 through 26.

28. Denied.

29. Denied.

30. Denied.

31. Defendants incorporate herein by reference their responses to paragraphs 1 through 30.

32. Denied.

33. Denied.

34. Admitted.

35. Denied.

36. Defendants incorporate herein by reference their responses to paragraphs 1 through 35.

37. Denied.

38. Denied.

39. Defendants incorporate herein by reference their responses to paragraphs 1 through 38.

40. Denied.

41. Denied.

42. Denied.

43. Defendants incorporate herein by reference their responses to paragraphs 1 through 42.

44. Defendants admit that they signed a recording contract with Eagle Records, but lack knowledge and information as to the precise date the contract was signed.

45. Denied.

46. Denied.

47. Denied.

48.     Denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint and each count thereof fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff is estopped to assert the claims alleged in the Complaint.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by his own unclean hands or by the doctrine of *in pari delicto*.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches or by the applicable statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of accord and satisfaction.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has released the Defendants of all claims alleged in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has waived the claims alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of frauds.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate his damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff lacks a right to trial by jury on one or more of the claims alleged herein.

WHEREFORE, Defendants respectfully request that the Complaint be dismissed, that they be awarded their costs, including reasonable attorneys' fees, and that they be granted such relief as is just and proper.

## COUNTERCLAIM

### Introduction

1. In this counterclaim, Defendants Independent Productions, Inc. and George Thorogood & The Destroyers, Inc. ("Defendants") seek a declaratory judgment that they have no liability to the plaintiff Henry G. Carter ("Carter") for any future payments of any kind or nature.

### PARTIES

2. Carter is an individual residing in Delaware.

3. Defendant Independent Productions, Inc. is a Pennsylvania corporation with a principal place of business in California. Defendant George Thorogood & The Destroyers, Inc. is a Pennsylvania corporation with a principal place of business in California.

### General Allegations

4. Beginning in the late 1970s, Carter was the saxophonist for the group George Thorogood & The Destroyers.

5. Beginning on or about May 21, 1982, Carter's relationship with the group was governed by a written employment agreement (the "Employment Agreement") with Defendant Independent Productions, Inc., a copy of which is appended hereto as Exhibit A.

6. The Employment Agreement continued in force, by its own terms and then by operation of law, until Carter's termination in 2003.

7. Pursuant to his Employment Agreement, Carter received compensation from the defendants solely as a salaried employee.

8. The Employment Agreement did not provide severance benefits in the event of termination.

9. In or about March 2003, Carter was terminated as an employee of Independent Productions, Inc. and as saxophonist of the group, George Thorogood & The Destroyers. His termination resulted, in part, from Carter's refusal, after numerous requests, to maintain a proper public appearance and to moderate his consumption of alcohol.

10. Following his termination, Independent Productions, Inc. has made one or more voluntary severance payments to Carter. These previous payments were paid to Carter as a W-2 employee, with proper withholding.

11. Carter has no entitlement to receive additional severance or other payments from Independent Productions, Inc. or any payments whatsoever from George Thorogood & The Destroyers, Inc.

WHEREFORE, Defendants respectfully request that the Court:

A. Declare that Carter has no further rights for any compensation from either of the Defendants;

B. Award the Defendants their costs, including attorneys' fees; and

C. Grant the Defendants such other relief as is just and proper.

ASHBY & GEDDES

/s/ Richard I.G. Jones, Jr.
_____
Richard I.G. Jones, Jr. (#3301)
John G. Day (#2403)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
rjones@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Defendants Independent Productions, Inc. and George Thorogood & The Destroyers, Inc.*

Of Counsel:
HOLLAND & KNIGHT LLP
Gordon P. Katz
(Massachusetts BBO No. 261080) (admitted *pro hac vice*)
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700


Dated:  January 30, 2008
187778.1

# EXHIBIT A

EMPLOYMENT AGREEMENT
================

THIS AGREEMENT made and entered into as of the 21st day of May, 1982, between INDEPENDENT PRODUCTIONS, INC., a Pennsylvania corporation (hereinafter referred to as "Employer") and HENRY CARTER (hereinafter referred to as "Employee").

W I T N E S S E T H:

For and in consideration of the respective covenants of the parties hereto it is mutually agreed as follows:

1. **EMPLOYMENT**.

    1.1 Employer hereby engages and employs Employee to render his exclusive services as a recording artist, including but not limited to his services as a singer, musician, musical recording artist and entertainer, in the field of phonograph recording. Employer shall also have the right to require that Employee render other services in related capacities to Employer, including, but not limited to services in connection with the production of video cassettes and/or discs to be used for the purpose of promoting and advertising Employee's recordings, which services shall be performed subject to the terms and conditions of this Agreement; provided, however, that Employer shall not require Employee to perform services as a songwriter or in the areas of personal appearances, legitimate stage, television or motion pictures. Employee hereby accepts said employment and agrees to:

        1.1.1 Render such services to and for the benefit of Employer during the term hereof;

        1.1.2 Render such services at such place or places throughout the world at such times and in such manner as may be required of persons employed in a like capacity according to the customs of the entertainment industry;

        1.1.3 Promptly and faithfully comply with all instructions, directions, requests, regulations and rules made or issued by Employer in connection herewith; and

        1.1.4 Perform and render services hereunder conscientiously and to the full limit of Employee's ability.

    1.2 Employer agrees to give Employee reasonable notice of all services to be performed by Employee hereunder.

-1-

8145A/445A/8-18-82

2. TERM.

The initial term of this Agreement shall be for one (1) year commencing on the date hereof. Employer shall have six (6) successive options to renew the term for additional consecutive periods of one (1) year, which options shall be deemed automatically exercised unless Employer gives Employee written notice of its intention not to exercise the option not less than thirty (30) days prior to the expiration of the then current year of the term. The initial term and the option periods shall hereinafter be referred to collectively as the Term. Notwithstanding anything to the contrary contained herein, in no event shall the Term hereof exceed the maximum period of time permitted by law for a contract to render exclusive personal services.

3. COMPENSATION.

3.1 On the condition that Employee fully performs all of his obligations and agreements hereunder, and in full consideration of the services to be rendered and rights granted and agreed to be granted to Employer hereunder, Employer agrees to compensate Employee at the rate of Two Thousand Dollars ($2,000.00) per month. Said compensation shall be paid to Employee on a monthly basis, and Employer shall have the right to deduct and withhold the following from any amounts due Employee hereunder:

3.1.1 All amounts required to be deducted or withheld pursuant to any present or future statute, law, ordinance, regulation, order, writ, judgment or decree requiring the withholding of compensation, including, but not limited to, withholding tax and FICA, and other amounts, required to be deducted or withheld pursuant to applicable local, state and federal law;

3.1.2 Any applicable minimum scale payments and any dues, fees or assessments payable to any labor organization with jurisdiction over the particular services performed hereunder, provided the amounts so deducted and withheld are remitted to such labor organization; and

3.1.3 All other expenses paid or incurred by Employer on behalf of Employee.

3.2 In addition to the compensation set forth in paragraph 3.1, Employee may at the discretion of Employer be paid additional compensation in the form of a bonus. Whether a bonus shall be paid to Employee, the amount of the bonus, the date payable and the terms of payment shall be determined by Employer's Board of Directors.

-2-

8145A/445A/8-18-82

3.3 During the Term, Employer may advance monies to or on behalf of Employee from time to time, which advances may be deducted by Employer from any compensation otherwise due Employee hereunder. If these advances exceed the amount of compensation due to Employee, such excess amount will be repaid to Employer on demand.

3.4 Employee agrees to reimburse Employer any portion of any amounts received from Employer, which shall be disallowed as a deductible expense by the Internal Revenue Service upon its determination becoming final, or, in the alternative, Employer may withhold from other sums payable to Employee hereunder until the amount owed to Employer has been recovered.

3.5 Employer shall furnish Employee with statements setting forth any and all deductions and retentions from any payment made to Employee.

4. PROCEEDS FROM EMPLOYMENT.

4.1 Employee agrees that Employer shall be the sole, absolute and exclusive owner throughout the world, in perpetuity, of all results and proceeds of Employee's services hereunder including but not limited to any phonograph recording, videotape or videodisc, and shall own all known or hereafter existing rights of any kind and character in and to said results and proceeds, whether or not such rights are now known, recognized or contemplated, without any restrictions, limitations or reservations whatsoever, including but not limited to the right to receive residuals, royalties or other deferred or contingent compensation attributable to said results and proceeds.

4.1.1 Without limiting the generality of the foregoing, Employer shall have the right to photograph Employee and his performances, and thereby or otherwise to reproduce his likeness and any and all of his acts, poses and appearances of any and all kinds hereunder, by any present or future methods or means, and the right to record Employee's voice and instrumental performances and to reproduce and/or transmit the same, by any present or future methods or means, either separately or in conjunction with such acts, poses and appearances as aforesaid, as Employer may desire.

4.2 The rights granted by Employee to Employer hereunder shall include, without limitation, the complete, exclusive and perpetual right throughout the world to record, reproduce, broadcast, televise, license, transmit, rerecord, vend, sell, transfer, distribute, lend, exploit and use for any purpose, in any manner, and by any means, whether or not now

known, invented, used or contemplated, the results and proceeds of Employee's services hereunder.

    4.3 Without limiting the generality of the foregoing, Employee hereby grants Employer the exclusive worldwide right during the Term and the non-exclusive right thereafter to utilize and to license others (including companies affiliated with Employer) to utilize Employee's name (both legal and professional), voice, likeness, picture and/or portrait in any manner whatsoever in connection with the manufacture, distribution and/or sale of any and all products or services during the Term, it being understood that a license or contract entered into during the Term shall be effective for the term of such license or agreement notwithstanding the expiration of this Agreement.

    4.4 Employer shall have the sole and exclusive right to copyright any results and proceeds of Employee's services hereunder in Employer's name as the owner and the author thereof, and shall have all rights of renewal, extension and termination of transfer of such copyrights.

    5.   EXCLUSIVITY. Employee agrees that Employee will, during the Term, render the services herein provided for solely and exclusively for and to Employer, and will not, during such time, render any such services for Employee's own account or the account of others.

    6.   PUBLICITY.

    6.1 Employee grants Employer the exclusive right to use or simulate Employee's name, photograph, likeness and voice and to use Employee's biography (fictionalized to the extent Employer deems appropriate) in connection with advertising or publicizing Employee's services hereunder, to third parties and the general public, including the right to use and exploit them in radio and television programs or other entertainment media to which Employer undertakes to provide Employee's services hereunder. During the Term Employer shall have the right to issue and approve the issuance of publicity concerning Employee. Employee agrees that after the expiration of the Term, Employer shall have the right to continue the use of Employee's name, likeness and biographical material in connection with all the results and proceeds of Employee's services hereunder.

    6.2 Employee agrees that Employee shall be available from time to time, to appear for photography, poster and cover art, etc., under the direction of Employer, to appear for interviews with representatives of the communications media and others, and to perform other reasonable promotional services.

-4-

7. **UNIQUE SERVICES.**

    7.1 The services of Employee and the rights and privileges granted to Employer under the terms hereof are of a special, unique, extraordinary and intellectual character, which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and a breach by Employee of any provision of this Agreement will cause Employer substantial and irreparable injury and damage. Accordingly, Employee hereby expressly agrees that Employer shall be entitled to the remedy of injunction, specific performance, and other equitable relief to prevent a breach of this Agreement by Employee. This provision shall not, however, be construed as a waiver of any rights which Employer may have for damages or otherwise.

    7.2 In the event Employee shall not receive the sum of Six Thousand Dollars ($6,000.00) during any one (1) year period of the term hereof, Employer shall pay Employee, as a nonreturnable advance recoupable from any and all monies paid to Employee hereunder, not later than the expiration of any such one (1) year period, the amount by which Six Thousand Dollars ($6,000.00) exceeds such sums theretofore received by Employee during such one (1) year period. All compensation paid to Employee pursuant to Paragraph 3 hereof, shall be applied towards such guaranteed minimum compensation. Notwithstanding anything herein to the contrary, in the event Employer shall fail to pay Employee such guaranteed minimum compensation as aforesaid, Employer's sole remedy hereunder shall be to terminate the term of this Agreement after complying with the provisions of Paragraph 17.6 hereof.

    Employee acknowledges and confirms that this provision is intended to preserve Employer's right to seek injunctive relief to prevent Employee's breach of this Agreement and accordingly, it is the parties mutual intention that this provision be interpreted and construed in such a manner as to comply with the provisions of California Civil Code Section 3423 (Fifth) concerning the availability of injunctive relief to prevent the breach of a contract in writing for the rendition of personal services. Furthermore, in the event that the California Civil Code Section 3423 (Fifth) is amended or supplemented to provide that the minimum compensation per annum under an enforceable personal services contract entered into prior to the effective date of such amendment shall be a sum greater than Six Thousand Dollars ($6,000.00) per annum, then the provisions of this paragraph shall be deemed automatically amended to provide that each Employee is guaranteed to receive payment per annum hereunder in an amount that the applicable amended law specifies.

-5-

8145A/445A/8-18-82

8.  **LOANOUT.**

   8.1  Employer may lend or otherwise furnish Employee's services hereunder to any other person, firm or corporation and all consideration therefore shall be paid to Employer. Employer shall pay or cause Employee to be paid applicable union scale payments for the rendition of Employee's services hereunder, and any and all amounts so paid to Employee whether by Employer or others for services rendered hereunder shall be deemed an advance against Employee's monthly salary set forth in Paragraph 3.1 above. In the event Employer lends the services of Employee hereunder, Employer shall, nevertheless, pay Employee all monies due Employee as herein provided; and Employer shall retain its rights hereunder and this Agreement shall continue in full force and effect and shall inure to the benefit of such other person, firm or corporation with respect to all services performed for such other person, firm or corporation, but Employee shall not be required to do any act or perform any services contrary to the provisions hereof.

   8.2  Employee agrees to perform and discharge, to the best of Employee's ability, all of the obligations and undertakings contained in any loan-out agreements to the extent which Employer undertakes to procure Employee's performance thereof, and to abide by all the warranties, representations, covenants and agreements on the part of Employer thereunder which concern Employee.

   8.3  Employer shall be entitled to receive and retain all proceeds and all other consideration derived from the loan-out and product of Employee's services to the borrower, including, but not limited to, the right to royalties, residuals and any deferred or contingent compensation, and Employee shall have no claim whatsoever against Employer on account of such payments.

   8.4  Any breach of this Agreement by any person, firm or corporation to whom Employer has loaned the services of Employee shall not constitute a breach of this Agreement by Employer, nor shall Employee have the right to terminate his employment hereunder; but in the event of such breach, Employee may decline to render any further services for such other person, firm or corporation in connection with the particular project with respect to which such breach occurred.

9.  **INCAPACITY OR DISABILITY.**

   9.1  In the event Employee is disabled or ill or for any other reason is unable to or refuses to perform any of the services required to be performed by Employee hereunder, Employer shall have the right to declare a suspension of this Agreement by notice in writing to Employee and such suspension

-6-

shall continue until Employee notifies Employer in writing that Employee is ready, willing and able to perform Employee's services hereunder, or until Employer otherwise terminates this Agreement as provided herein. In the event of any such suspension, Employer shall have the right to extend the Term for a period of time equal to the period of such disability illness, inability to perform or default of Employee. Employer shall have the right, at its election, to terminate this Agreement in the event Employee's disability, illness or other inability to perform continues for eight (8) consecutive weeks.

     9.2 During the period of any suspension hereunder based upon default of Employee, no compensation shall accrue or be paid to Employee. During the period of any suspension hereunder based upon the disability or illness of Employee, Employer shall have the right, but not the obligation to pay minimum guaranteed compensation to Employee during all or any part of such suspension.

     9.3 If Employee at any time alleges that Employee is, or if Employee should at any time actually be, prevented by illness or other disability or incapacity from the full and faithful performance of this Agreement, Employer shall have the right at its option to have medical examinations of Employee made by such physician or physicians as Employer may designate.

    10. __FORCE MAJEURE.__ If during the Term, Employer or any borrower of Employee's services is materially hampered in, or interrupted or prevented from proceeding in the normal conduct of its business by reason of fire, strike, labor dispute, governmental order, act of God, public enemy, war or other cause or causes beyond the control of Employer or borrower, whether of the same or any other nature, and the services of Employee are not utilized during such period of time, Employer shall have the right to suspend this Agreement. No compensation shall accrue or be payable hereunder during such period of suspension. Notwithstanding the foregoing, if any single period of suspension under this paragraph shall exceed three (3) months, Employee shall have the right to terminate this Agreement by notice to Employer of his desire to so terminate, which termination shall be effective if, and only if, Employer does not lift the suspension within two (2) weeks after receiving such notice from Employee. Employee's right to terminate this Agreement pursuant to the preceding sentence shall apply only if the contingency giving rise to the suspension is restricted to Employer's business operations and does not affect the entire industry within which Employee's services are being rendered.

11. **EMPLOYEE WARRANTIES; INDEMNIFICATION.**

11.1 Employee represents, warrants and agrees that Employee is free to enter into this Agreement and is not subject to any obligation or disability which will or might prevent or interfere with Employee in fully keeping and performing all of the covenants and conditions to be kept and performed by Employee hereunder.

11.2 Employee agrees to and hereby indemnifies, saves and holds Employer harmless from any and all losses and damages (including attorneys' fees) arising out of or connected with any claim by a third party which is inconsistent with any of the warranties or representations made by Employee hereunder, and agrees to reimburse Employer on demand for any payment made by Employer at any time after the date hereof with respect to any liability or claim to which the foregoing indemnity applies. Employee shall be given prompt notice of any such claim and shall have the right to have his own counsel, at his sole expense, assist in the defense of such claim; provided that unless Employer otherwise elects, Employer shall control such litigation. Employer shall not enter into a settlement of any such claim without the consent of Employee, provided that if Employee does not so consent, Employee shall furnish to Employer a bond in the total amount of the claim plus anticipated expenses in form satisfactory to Employer. In addition to all of Employer's other rights and remedies in connection with such indemnity, all such costs and damages shall be deemed an advance against any sums payable to Employee under this or any other agreement between Employer and Employee. Upon the final adjudication or settlement of each claim hereunder, all moneys withheld shall then be disbursed in accordance with the rights of the parties as provided herein.

12. **UNION MEMBERSHIP.**

12.1 Employee agrees that at Employer's request, Employee will become and remain during the remainder of the term of this Agreement, a member in good standing of any labor or trade union having jurisdiction with regard to any of the matters or activities required in the rendition of Employee's services hereunder, and Employer agrees that this Agreement and all of the terms hereof shall in all respects be subject to all of the terms and provisions of any applicable guild or union agreement and the rules and regulations pertaining to said organizations and the activities herein contemplated.

12.2 If during the Term Employer is a party to a collective bargaining agreement which contains separate minimum union rates applicable to any of the services which Employee may be required to perform hereunder or any use which may be

8145A/445A/8-18-82

made of the results and proceeds of Employee's services hereunder, Employer shall not be required to make any payments to Employee in addition to the compensation specified herein unless the aggregate of the union minimum rates applicable to the services rendered by Employee and the minimum rates applicable to any use shall exceed the compensation payable to Employee hereunder. Employer and Employee shall comply with the provisions of all applicable union agreements, codes of fair practice, and rules promulgated by the unions or guilds with jurisdiction over the particular services of Employee performed hereunder.

13. **INSURANCE**. If Employer should desire to obtain any form of insurance (including life, health, accident or other insurance) on or with respect to Employee, Employee agrees to cooperate with Employer in obtaining such insurance and agrees to submit to the usual and customary medical examinations requisite therefor, which insurance shall be obtained at the expense of Employer for its sole benefit during the Term. If any such life insurance shall be obtained, Employer agrees that upon Employee's written request prior to the expiration of the Term, to assign such life insurance to Employee at the expiration of the Term, upon payment by Employee to Employer of the cash surrender value, if any, of such life insurance policy as of the date of the expiration of the Term.

14. **SEVERABILITY**. In the event that any term, condition, covenant, agreement, requirement or provision hereof shall be held by any court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

15. **POWER OF ATTORNEY**.

    15.1  Employee hereby authorizes and empowers Employer to act as his exclusive agent to:

        15.1.1   Collect, accept and receive all monies, checks, drafts or money orders which are or become due and payable for Employee's services hereunder, to endorse Employee's name on any such checks, drafts or money orders, and to cause such monies, checks, drafts or money orders to be deposited in Employer's bank account;

        15.1.2   Approve and allow all publicity and advertising concerning Employee as permitted under this Agreement; and

        15.1.3   Cause to be executed in Employee's name and/or on behalf of Employee any and all agreements, documents and contracts for Employee's services and the results and proceeds thereof.

-9-

15.2  The authority herein granted to Employer is coupled with an interest and shall be irrevocable during the Term.

16.  **ADDITIONAL DOCUMENTS**.  Employee hereby agrees to execute any and all documents that Employer may deem necessary or desirable to effectuate the terms of this Agreement, including, but not limited to, artist inducement letters guaranteeing Employee's performances in connection with loan-out agreements entered into by Employer.

17.  **MISCELLANEOUS**.

17.1  No waiver by Employer of any breach of this Agreement shall be deemed a waiver of any preceding or succeeding breach of the same or any other provision hereof.

17.2  Each and all of the several rights, remedies and options of Employer hereunder shall be construed as cumulative and no one of them is exclusive of the other or of any right, remedy, or priority allowed by law or in equity.

17.3  Time is of the essence of this Agreement.

17.4  This Agreement shall be governed by and construed under and in accordance with the laws of the <u>State of California</u>.

17.5  Paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

17.6  No breach of this Agreement by Employer shall be deemed material unless, within thirty (30) days after Employee discovers such breach, Employee serves written notice on Employer thereof, by registered mail, and Employer does not (i) remedy such breach within thirty (30) days, after receiving such notice, or (ii) take reasonable steps to commence curing such breach if such breach cannot be completely remedied within such thirty (30) day period.

18.  **NOTICES**.  All notices required or desired to be given hereunder shall be in writing and shall be sent by United States certified or registered mail, postage prepaid, or by telegraphing the same, addressed to Employer or Employee at the following addresses or at such other address as Employer or

Employee may designate to the other from time to time in writing:

To Employee:                Henry Carter

With copy to:

To Employer:                Independent Productions, Inc.
                            c/o William A. Hutchings III
                            RD #1 Box 245
                            Landenberg, Pennsylvania 19350

With copy to:               Cooper, Epstein & Hurewitz
                            9465 Wilshire Blvd., Suite 800
                            Beverly Hills, California 90212
                            Attention: Neil Fischer, Esq.

The date of mailing or telegraphing of any notice hereunder shall be deemed the date of service of said notice.

19. **ASSIGNMENT OF AGREEMENT**. This Agreement, at Employer's election, shall inure to the benefit of Employer's successors and assigns, and associated, affiliated or subsidiary companies. Employer may assign this Agreement or any part hereof to any person, firm or corporation having at least substantially the same net worth as Employer, or to any corporation or corporations with which Employer may be merged, consolidated or combined, or to a corporation which may acquire a substantial portion of the assets of Employer.

20. **ENTIRE AGREEMENT**. This Agreement supersedes all prior negotiations and understandings between the parties relating to the subject matter hereof, and contains all of the terms, conditions and agreements of the parties hereto. No

-11-

8145A/445A/8-18-82

modification or waiver of any of the provisions hereof shall be valid or binding unless in writing.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement of as the date first above written.

INDEPENDENT PRODUCTIONS, INC.

By: _____
                                 "Employer"

_____
HENRY CARTER         "Employee"

-12-

8145A/445A/8-18-82